FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JUN 24 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

LARRY JACKSON

                                       Plaintiff,

**CV 11 - 3028**

Jury Trial Demand

        -against-

THE CITY OF NEW YORK; JOHN DOE 1, as Duty Chief;
JOHN DOE 2, as Duty Inspector; JOHN DOE 3, as Duty
Captain; JOHN DOE 4, as Midnight Platoon Commander,
113th Precinct; JOHN DOE 5, as Midnight Patrol Supervisor,
113th Precinct; JOHN DOES 6-20, each being sued
individually and in their official capacities as employees of
Defendant THE CITY OF NEW YORK

**GLEESON, J.**

**GOLD, M.J.**

                                     Defendants'

-----------------------------------------------------------------------x

      The Plaintiff LARRY JACKSON by his attorney The Sanders Firm, P.C., as and for

his Complaint against Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN

DOE 4; JOHN DOE 5; and JOHN DOES 6-20, respectfully set forth and allege that:

## INTRODUCTION

      This is an action for equitable relief and money damages on behalf of the Plaintiff LARRY

JACKSON, (hereinafter referred to as "Plaintiff") who was and is being deprived of his statutory

rights as an employee as a result of Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3;

JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20'S racial animus.

## JURISDICTION AND VENUE

1.     The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1965, 28 U.S.C. §§

1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

            a.     the Civil Rights Act of 1866, 42 U.S.C. § 1981, providing for the protection

                 of all person's right to make and enforce contracts under the color of State

Law; and

b.       the Civil Rights Act of 1871, 42 U.S.C. § 1983, providing for the protection

of all persons in his civil rights and the redress of deprivation of rights under

color of law.

2.       The unlawful employment practices, violations of Plaintiff's civil rights complained

of herein were committed within the Eastern and Southern Districts of New York.

3.       The pendent jurisdiction of the federal district court is invoked with respect to the

Plaintiff's claims under New York State Executive Law § 296; New York City Administrative Code

§ 8-107; Negligence; Negligent Infliction of Emotional Distress; Assault; False Arrest; False

Imprisonment; Malicious Prosecution and Intentional Infliction of Emotional Distress, pursuant to

28 U.S.C. 1367, because the entire action before the court comprises one constitutional and civil

rights case, and the claims arise out of the same common nucleus of facts and are such that the

Plaintiff would ordinarily be expected to try them in one judicial proceeding.

## PROCEDURAL REQUIREMENTS

4.       Plaintiff has filed suit with this Court within the applicable statute of limitations

period.

5.       Plaintiff is not required to exhaust any administrative procedures prior to suit under

the Civil Rights Act of 1866 or the Civil Rights Act of 1871.

6.       On or about August 30, 2010, Plaintiff filed a Notice of Claim within ninety days

of the alleged incident with the New York City Comptroller's Office.

7.       On or about January 11, 2011, Plaintiff appeared for a GML 50-h Hearing for an

Examination Before Trial (EBT).

8.       Plaintiff alleges that during the adjustment period, the case was not settled.

## PLAINTIFF

9.      Plaintiff LARRY JACKSON is a male citizen of the United States of America and is

over twenty-one (21) years of age, a resident of Queens County and is an employee of Defendant

THE CITY OF NEW YORK (hereinafter referred to as the "CITY") more specifically the Police

Department City of New York (hereinafter referred to as the "NYPD"). For the purposes of this

litigation, Defendant CITY may be identified interchangeably using CITY or NYPD to identify the

employer which is the CITY.

## DEFENDANTS'

10.      Defendant CITY was and is a municipal corporation organized and existing under

and by virtue of the law of the State of New York, and at all relevant times Plaintiff's employer,

with its central offices in the county of New York, and diverse other offices and facilities

throughout the world.

11.      Defendants' JOHN DOE 1, as Duty Chief; JOHN DOE 2, as Duty Inspector;

JOHN DOE 3, as Duty Captain; JOHN DOE 4, as Midnight Platoon Commander, 113th Precinct;

JOHN DOE 5, as Midnight Patrol Supervisor, 113th Precinct; JOHN DOES 6-20, each being

sued individually and in their official capacities as employees of Defendant THE CITY OF NEW

YORK.

## BACKGROUND

12.      Plaintiff is an African-American male employee of the NYPD.

13.      Plaintiff alleges that Defendant CITY through its agents have a long history of

discriminating against its African-American male police officers.

14.      Plaintiff alleges that Defendant CITY through its agents have a long history of

performing flawed and unfair criminal investigations whenever African-American Male police

officers complain about false charges being filed against them by Caucasian Male police officers.

15.    Plaintiff alleges that Defendant CITY through its agents have a long history of performing flawed and unfair criminal investigations whenever African-American Male police officers complain about excessive force being used against them by Caucasian Male police officers.

16.    Plaintiff alleges that Defendant CITY through its agents have a long history of performing flawed and unfair internal investigations whenever African-American Male police officers complain about discriminatory conduct against them by Caucasian Male police officers.

17.    Plaintiff alleges that Defendant CITY through its agents engage in such biased behavior because of the decision makers preconceived notions that African-American Male police officers are aggressive, violent and forever threatening to Caucasian Male police officers.

18.    Plaintiff alleges that since 1973, the Department has specifically addressed "Confrontation Situations" in its training modules and policies.

19.    Plaintiff alleges that on or about June 8, 2008, Assistant Chief George Anderson eliminated training time for "Confrontation Situations."

20.    Plaintiff alleges that on or about May 28, 2009, not even one year later, now deceased off-duty Detective Omar Edwards (African-American Male) was shot and killed by an on-duty Caucasian Male police officer under the mistaken belief that he was a criminal.

21.    Plaintiff alleges that immediately after that incident, Police Commissioner Raymond W. Kelly promised to enhance "Confrontation Situations" training.

22.    Plaintiff alleges that since then, not much has changed with respect to "Confrontation Situations" training.

23.     Plaintiff alleges that the Police Commissioner Raymond W. Kelly has consistently rejected calls to reform the training module despite recommendations by respected law enforcement experts.

24.     Plaintiff alleges that "Confrontation Situations" is one of the most important training modules in the police department.

25.     Plaintiff alleges that since the inception of the Department Caucasian Male police officers have mistakenly injured and/or mistakenly killed minority police officers while off-duty and/or in plainclothes while taking police action.

26.     Plaintiff alleges that "Confrontation Situations" is one of the most often changed police policies because of the nature of the inherent racial bias problem.

27.     Plaintiff alleges that "Confrontation Situations" are evaluated in the context of racial bias.

28.     Plaintiff alleges that in "Confrontation Situations" the policy directs that a report to be sent to the Office of Equal Employment Opportunity to be evaluated in the context of racial bias.

29.     Plaintiff alleges that because the majority of times, minority police officers are the ones who complain about being mistreated by Caucasian Male police officers.

30.     Plaintiff alleges that majority of time if there are injuries and/or deaths during such "Confrontation Situations" minority police officers (meaning African-American and/or Hispanic Males) statistically outweigh any other racial category despite their smaller numbers.

31.     Plaintiff alleges that "Confrontation Situations" usually involves the challenging officer, usually a Caucasian Male police officer on-duty either in uniform or in plainclothes.

32.     Plaintiff alleges that the challenging officer is required to use sound tactics and judgment when approaching the situation.

33.     Plaintiff alleges that the challenged officer, usually a minority police officer off-duty or on-duty in in plainclothes.

34.     Plaintiff alleges that the challenged officer, must obey all commands of the challenging officer and clearly identify his or herself.

35.     Plaintiff alleges that the Department is aware of this serious problem.

36.     Plaintiff alleges that or about December 3, 2009, Deputy Commissioner of Training Wilbur Chapman testified before the Governor's Task Force on Police Shootings.

37.     Plaintiff alleges that Deputy Commissioner Wilbur Chapman acknowledged that since the 1930s ten police officers have lost their lives in incidents involving mistaken identity.

38.     Plaintiff alleges that the Department hired an outside expert to study how training may reduce the influence of racial bias on behavior.

39.     Plaintiff alleges that the Department hired Dr. Joshua Corell, Associate Professor from the University of Chicago to evaluate racial bias in "Confrontation Situations."

40.     Plaintiff alleges that the Department consulted with representatives of the various police fraternal organizations in an effort to reduce "Confrontation Situations."

41.     Plaintiff alleges that there are NO consequences for violating this policy.

42.     Plaintiff alleges that is why this problem persists.

43.     Plaintiff alleges that less than one year later, he received substantial injuries as the challenged officer in a "Confrontation Situation" despite identifying himself numerous times to the challenging officers.

44.     Plaintiff alleges that racial bias and stereotyping was the driving force that dictated the outcome of this "Confrontation Situation."

45.     Plaintiff alleges that on or about August 22, 2010, he was off-duty.

46.     Plaintiff alleges that approximately 0140 hours, while in the process of winding down an earlier barbeque at his home, an unidentified Black Male[1] threw a bottle breaking it in the street.

47.     Plaintiff alleges that his domestic partner Charlene Strong went outside to clean up the broken glass.

48.     Plaintiff alleges that he noticed Charlene Strong trying to physically stop this unidentified Black Male.

49.     Plaintiff alleges that he went outside to investigate.

50.     Plaintiff alleges that he overheard the unidentified Black Male say with a West Indies accent "Yo. They are trying to disrespect me."

51.     Plaintiff alleges that he overheard Charlene Strong say "This is my daughter's birthday and we do not want any trouble, take that somewhere else."

52.     Plaintiff alleges that as he got closer, he observed the unidentified Black Male brandishing a silver handgun in his waistband.

53.     Plaintiff alleges that he grabbed Charlene Strong and pulled her behind him to shield her from the Black Male.

54.     Plaintiff alleges that he then confronted the Black Male consistent with his training as a police officer.

55.     Plaintiff alleges that at the time, he was unarmed off-duty but, carrying his shield

---

[1] During Plaintiff's own independent investigation, we were able to identify a witness that indicated a possible address for the male.

and police identification card.

56.     Plaintiff alleges that since he was unarmed, he did not identify himself to the Black Male, he tried to de-escalate the situation.

57.     Plaintiff alleges that he said to the Black Male "Listen, this is my daughter's party and we do not want any trouble."

58.     Plaintiff alleges that he then noticed approximately fifteen to twenty Black males walking towards them, some with sticks and bats.

59.     Plaintiff alleges that he did not know any of those males.

60.     Plaintiff alleges that Charlene Strong then ran to the house to call the police.

61.     Plaintiff alleges that when Charlene Strong called 911 she requested assistance for him and gave the operator his full description including clearly stating that he is a police officer.

62.     Plaintiff alleges that he was able to calm the guy down and get the crowd to move down the block.

63.     Plaintiff alleges that while the crowd was moving, he could see and hear a fast moving vehicle.

64.     Plaintiff alleges that he yelled "Get out of the street!"

65.     Plaintiff alleges that the crowd quickly dispersed.

66.     Plaintiff alleges that he noticed that the vehicle was actually a marked police vehicle.

67.     Plaintiff alleges that the marked police vehicle sped right past him.

68.     Plaintiff alleges that the marked police vehicle stopped in front of his home.

69.     Plaintiff alleges that he walked towards his home to meet the police.

70.     Plaintiff alleges that Charlene Strong walked towards the marked police vehicle.

71.     Plaintiff alleges that the marked police vehicle was occupied by one uniformed police officer Defendant JOHN DOE 6 (Caucasian Male) and one police sergeant Defendant JOHN DOE 5 (Caucasian Male).

72.     Plaintiff alleges that Charlene Strong told Defendant JOHN DOE 6, who was the operator, "I am the one who called 911."

73.     Plaintiff alleges that Defendant JOHN DOE 6 barely acknowledged her.

74.     Plaintiff alleges that she further said "My husband is a police officer."

75.     Plaintiff alleges that she further said "He is a MOS (meaning Member of the Service)."

76.     Plaintiff alleges that she then pointed towards him.

77.     Plaintiff alleges that at this point, he was standing immediately next to Defendant JOHN DOE 5.

78.     Plaintiff alleges that he said "Hey Sarge, I am a MOS."

79.     Plaintiff alleges that Defendant JOHN DOE 5 barely acknowledged him.

80.     Plaintiff alleges that at the time, he was still in possession of his shield and police identification card.

81.     Plaintiff alleges that all of a sudden, they could hear a loud argument coming from inside of the home.

82.     Plaintiff alleges that Defendant JOHN DOE 6, all of a sudden ran alone into the home.

83.     Plaintiff alleges that Defendant JOHN DOE 5 remained outside.

84.     Plaintiff alleges that Defendant JOHN DOE 5 never tried to restrain Defendant JOHN DOE 6 from running into the house.

85.    Plaintiff alleges that he then ran into the house to see what was going on.

86.    Plaintiff alleges that when he entered the house, he noticed Jason Wilkinson lying
unconscious on his living room floor.

87.    Plaintiff alleges that Taimar Bonaparte was lying under Jason Wilkinson trying to
get up.

88.    Plaintiff alleges that he approached Marcus Johnson in the kitchen to find out
what was going on.

89.    Plaintiff alleges that when he turned around Defendant JOHN DOE 6 confronted
him with his ASP Tactical Baton (Aluminum) fully expanded in both hands level in the
horizontal position.

90.    Plaintiff alleges that Defendant JOHN DOE 6 ordered him to "Back the fuck up!"

91.    Plaintiff alleges that he said "Dude, it is my house and I am a police officer too."

92.    Plaintiff alleges that Defendant JOHN DOE 6 did not de-escalate the situation he
made things worse.

93.    Plaintiff alleges as the challenging officer, Defendant JOHN DOE 6 never
requested to see his police identification.

94.    Plaintiff alleges that as the challenged officer before he could show his police
identification Defendant JOHN DOE 6 aggressively moved towards him and placed the ASP
Tactical Baton on his throat causing him to move backwards towards the living room.

95.    Plaintiff alleges that he said "Dude. What are you doing?"

96.    Plaintiff alleges that he further said "I am a police officer too."

97.    Plaintiff alleges that again, as the challenging officer, Defendant JOHN DOE 6
never requested to see his police identification.

98.    Plaintiff alleges that as the challenged officer before he could show his police identification Defendant JOHN DOE 6 aggressively placed the ASP Tactical Baton near his throat but, he was actually struck him in his face.

99.    Plaintiff alleges that he is unsure if he was struck in the face with the ASP Tactical Baton or Defendant JOHN DOE 6'S fist or a combination of both.

100.    Plaintiff alleges to protect himself against further strikes he grabbed Defendant JOHN DOE 6 around his shoulders.

101.    Plaintiff alleges that Defendant JOHN DOE 5 did not intervene or control the situation.

102.    Plaintiff alleges that while again trying to identify himself to Defendant JOHN DOE 6, he threw a punch at him.

103.    Plaintiff alleges that while Defendant JOHN DOE 6 was throwing a punch towards him, he tripped and fell over the refreshment cooler.

104.    Plaintiff alleges that while trying to help Defendant JOHN DOE 6 up an unidentified uniformed police officer Defendant JOHN DOE 7 (Dark Skinned Male) placed him in a choke hold.

105.    Plaintiff alleges that the use of choke holds as a physical restraint is banned by Department policy because you can accidentally suffocate someone.

106.    Plaintiff alleges that he was trying to tell challenging officer Defendant JOHN DOE 7 that he is a police officer but, the choke hold was so tight, he could hardly speak or breathe.

107.    Plaintiff alleges that meanwhile, he could hear the other family members in the house yelling, "He is one of y'all, what are you doing?"

108.    Plaintiff alleges that the more he tried to explain, the harder Defendant JOHN DOE 7 would choke him.

109.    Plaintiff alleges that as the challenged officer he again tried to reach into his front pocket to show his shield and police identification card to Defendant JOHN DOE 7, but someone kept moving his hand away.

110.    Plaintiff alleges that Defendant JOHN DOE 5 did not intervene or control the situation.

111.    Plaintiff alleges that he and Defendant JOHN DOE 7 then fell onto Charlene Strong's eighty-two year old mother seated on the living room couch.

112.    Plaintiff alleges that he heard someone say "Oh my God, mommy!"

113.    Plaintiff alleges that Defendant JOHN DOE 7 then let him go.

114.    Plaintiff alleges that Defendants' JOHN DOES 5, 6 and 7 never tried to de-escalate the situation or identify him.

115.    Plaintiff alleges that at that time, the living room area was filled with approximately six to seven unidentified uniformed police officers.

116.    Plaintiff alleges that none of the unidentified uniformed police officers tried to intervene or de-escalate the situation.

117.    Plaintiff alleges that he believes that Defendant JOHN DOE 5 was one of the unidentified uniformed police officers as well as at least an unidentified police lieutenant.

118.    Plaintiff alleges that no police supervisor tried to intervene, de-escalate the situation or identify him.

119.    Plaintiff alleges that unidentified uniformed police officers then placed Taimar Bonaparte in handcuffs.

120. Plaintiff alleges that he then observed Taimar Bonaparte being dragged out of the house by the unidentified uniformed police officers.

121. Plaintiff alleges that he then ran to the front door to see what was going on.

122. Plaintiff alleges that the unidentified uniformed police officers then threw Taimar Bonaparte onto the trunk area of a marked police vehicle.

123. Plaintiff alleges that these unidentified uniformed police officers were slamming Taimar Bonaparte onto the marked police vehicle.

124. Plaintiff alleges that there were both marked and unmarked police vehicles parked up the entire block.

125. Plaintiff alleges that there were police officers everywhere.

126. Plaintiff alleges that no police officer tried to intervene or de-escalate the situation.

127. Plaintiff alleges that he could see at least one police supervisor wearing a white shirt, presumably a captain.

128. Plaintiff alleges that the police supervisor wearing the white shirt did not intervene or de-escalate the situation.

129. Plaintiff alleges that there were a crowd of onlookers there as well.

130. Plaintiff alleges that another unidentified uniformed police officer Defendant JOHN DOE 8 (Caucasian Male) ran towards him and said "Stay there and don't move."

131. Plaintiff alleges that he then told challenging officer Defendant JOHN DOE 8 "I am a police officer and this is my house."

132. Plaintiff alleges that another unidentified uniformed police officer Defendant JOHN DOE 9 (Caucasian Male) then struck him in the head with an ASP Tactical Baton.

133.    Plaintiff alleges that he was stunned and stumbled down the steps near the front lawn.

134.    Plaintiff alleges that he then felt a big lump on his head.

135.    Plaintiff alleges that then a group of unidentified uniformed police officers then started striking him about the back with their ASP Tactical Batons.

136.    Plaintiff alleges that these unidentified uniformed police officers then jumped onto his back.

137.    Plaintiff alleges that he felt someone grab his right arm and place a handcuff on his hand.

138.    Plaintiff alleges that at this point he was near the street.

139.    Plaintiff alleges that shortly thereafter, after being further grabbed and struck he somehow wound up in the middle of the street.

140.    Plaintiff alleges that the unidentified uniformed police officers then knocked him down to the ground.

141.    Plaintiff alleges that he was lying flat of his stomach because there were so many police officers striking him.

142.    Plaintiff alleges that he could see a large light on the ground he presumed that it was a police helicopter.

143.    Plaintiff alleges that he was being kicked about the body.

144.    Plaintiff alleges that they were also using the ASP Tactical Baton handle ends to dig into his body.

145.    Plaintiff alleges that two unidentified uniformed police officers Defendants' JOHN DOES 10 and 11 placed their knees into his back with all of their weight.

146.   Plaintiff alleges that he was having difficulty breathing.

147.   Plaintiff alleges that while he was being handcuffed another unidentified uniformed police officer Defendant JOHN DOE 12 sprayed Oleoresin Capsicum (OC) spray into his eyes.

148.   Plaintiff alleges they could not place the second handcuff onto his left hand because there were so many uniformed police officers on top of him.

149.   Plaintiff alleges that two other unidentified uniformed police officers were able to sit him up.

150.   Plaintiff alleges that during the entire melee, no police supervisor or any other police officer intervened or de-escalated the situation.

151.   Plaintiff alleges that Defendant JOHN DOE 6 then ran over to him and said "Yeah, you motherfucking dirt bag, if you are really a cop, where is your ID?"

152.   Plaintiff alleges that he responded "My ID has been in my front pocket the whole entire time."

153.   Plaintiff alleges that he further said "I told you that in the house."

154.   Plaintiff alleges that Defendant JOHN DOE 6 walked away when Defendant JOHN DOE 3 approached him.

155.   Plaintiff alleges that Defendant JOHN DOE 3 ordered one of the unidentified uniformed police officers to check his front pocket for ID.

156.   Plaintiff alleges that Defendant JOHN DOE 3 along with other unidentified uniformed police officers formed a semi-circle around him.

157.   Plaintiff alleges that when Defendant JOHN DOE 3 saw his shield and ID, just about everyone scattered.

158.    Plaintiff alleges that Defendant JOHN DOE 3 ordered the handcuffs removed.

159.    Plaintiff alleges that Defendant JOHN DOE 3 ordered an unidentified uniformed police officer to stand him up and remove the handcuffs.

160.    Plaintiff alleges that the unidentified uniformed police officers disobeyed his direct order.

161.    Plaintiff alleges that two unidentified uniformed police officers escorted him over to a marked police vehicle.

162.    Plaintiff alleges that he was then transported to the 113th Precinct.

163.    Plaintiff alleges that the two unidentified uniformed police officers presented him in front of the Desk Officer as if they were processing him as an arrest but, they were ordered to take him to the Youth Office.

164.    Plaintiff alleges that the handcuffs were then removed.

165.    Plaintiff alleges that Charlene Strong sat with him.

166.    Plaintiff alleges that he was not free to leave.

167.    Plaintiff alleges that throughout the twenty hour period he was in police custody he was visited numerous times by unidentified police supervisors from the Internal Affairs Bureau.

168.    Plaintiff alleges that at some point, they determined that he was fit for duty and not under the influence of any intoxicants.

169.    Plaintiff alleges that he was bleeding from a deep gash on his right hand and it was severely swollen.

170.    Plaintiff alleges that he had bruises and contusions about his body with circular welt marks near the rib area from the ASP Tactical Baton handles and straight patterned welt

marks across his back as if he were whipped with a Bull Whip.

171.    Plaintiff alleges that the emergency medical service (EMS) was called.

172.    Plaintiff alleges that he was removed to New York Hospital for treatment along with a police escort.

173.    Plaintiff alleges that the medical staff took x-Rays of his hands, back and rib cage.

174.    Plaintiff alleges that the medical staff treated him for a fractured right hand and contusions about his face and body.

175.    Plaintiff alleges that at or about 0800 hours, he was transported back to the 113th Precinct.

176.    Plaintiff alleges that he still was not free to leave.

177.    Plaintiff alleges that an unidentified female captain from the Internal Affairs Bureau introduced herself and asked him for his name, shield number, tax registry number and command.

178.    Plaintiff alleges that after giving it to her, he never saw her again.

179.    Plaintiff alleges that an unidentified male lieutenant from the Internal Affairs Bureau then took numerous pictures of his back, ribs and head.

180.    Plaintiff alleges that he then sat in the Youth Office until around 2230 hours.

181.    Plaintiff alleges that during that time, no one told him what was going on.

182.    Plaintiff alleges that after Defendants' JOHN DOES 1, 2 and 3, conferral, the decision was made to "modify" him.

183.    Plaintiff alleges that an unidentified male supervisor told him that he was being "modified."

184.    Plaintiff alleges that Defendants' JOHN DOES 1, 2 and 3 did nothing to protect

his interests.

185.    Plaintiff alleges that Defendants' JOHN DOES 1, 2, and 3 did not suspend, modify or otherwise discipline any police officers for their conduct towards him.

186.    Plaintiff alleges that his shield, firearms and police identification were removed.

187.    Plaintiff was never told why he was arrested and placed in handcuffs.

188.    Plaintiff alleges that Defendant CITY through its agents refused to file a Line of Duty Report and related paperwork as the injuries he sustained are a direct result of him taking police action with respect to the man with the silver handgun.

189.    Plaintiff alleges that since Defendant CITY through its agents refused to file the appropriate reports, he had to pay for his medical expenses through his private insurance carrier as opposed to the Medical Division expensing all medical costs.

190.    Plaintiff alleges that since Defendant CITY through its agents refused to file the appropriate reports, in the future if his hand does not improve and he is forced to file for an accidental disability retirement pension or he is surveyed, the Medical Division and the Board of Trustees will likely deny him his right to a more lucrative ¾ tax free pension and award him an ordinary 1/3 taxable pension.

191.    Plaintiff alleges that on or about August 25, 2010, he submitted DNA samples to the Internal Affairs Bureau to assist with their alleged attempt to identify who struck him with their ASP Tactical Batons and/or other police equipment.

192.    Plaintiff alleges that on or about August 30, 2010, he filed a Notice of Claim with the New York City Comptroller's Office.

193.    Plaintiff alleges that shortly thereafter, he was interviewed by the Integrity Bureau of the Queens District Attorney's Office.

194.  Plaintiff alleges that shortly thereafter, he was transferred to a VIPER Unit to monitor video cameras.

195.  Plaintiff alleges that on or about September 13, 2010, Orthopaedic Surgeon Dr. William A. Facibene further confirmed the fracture to his right hand.

196.  Plaintiff alleges that he is right hand dominant.

197.  Plaintiff alleges that to this day his right hand is still not 100%.

198.  Plaintiff alleges that he still experiences stiffness in his right hand.

199.  Plaintiff alleges that his prospects for returning to full duty are improbable.

200.  Plaintiff alleges that because of his injuries he will likely have to file and application for disability retirement.

201.  Plaintiff alleges that on or about April 11, 2011, he was notified that the Group Health Incorporated (GHI) has hired The Rawlings Company, LLC to protect its subrogation rights.

202.  Plaintiff alleges that to this day, the Internal Affairs Bureau has not contacted him about their alleged internal investigation.

203.  Plaintiff alleges that to this day, the Office of Equal Employment Opportunity has not contacted him about their alleged investigation.

204.  Plaintiff alleges that to this day, the Integrity Bureau of the Queens District Attorney's Office has not contacted him about their alleged investigation.

205.  Plaintiff alleges that based on the foregoing, Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20'S racial animus. has racially discriminated against him and violated his civil rights.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### RACE DISCRIMINATION
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

206.    Plaintiff re-alleges Paragraphs 1 through 205 and incorporates them by reference as Paragraphs 1 through 205 of Count I of this Complaint.

207.    Plaintiff alleges that by the aforesaid discriminatory acts and omissions of Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acting individually and in their official capacities as public officials of Defendant CITY interfered with his right to enforce contracts under the color of state law because of his race.

208.    Plaintiff alleges that the purpose of Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 in so acting was to prevent him, through economic and psychological intimidation, from seeking the equal protection of the laws.

209.    Plaintiff alleges that pursuant to their conduct, Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acted to deprive him of his civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threats.

210.    Plaintiff alleges that as a result of the aforesaid acts, depriving him of his civil rights, he suffered mental anguish, emotional distress, and loss of employment opportunities.

### COUNT II
### RACE DISCRIMINATION
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

211.    Plaintiff re-alleges Paragraphs 1 through 210 and incorporates them by reference as Paragraphs 1 through 210 of Count II of this Complaint.

212.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, personally interfered with and deprived him of his constitutional rights, including the rights to petition his government for redress of his grievances and to be free from deprivation of life, liberty, and property without due process of law.

213.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acting individually and in their official capacities as a public officials of Defendant CITY under color of law, and having been fully advised that he was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against him, or knowing such discrimination was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

214.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with gross disregard of his rights.

215.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at him and continuing from in or around August 22, 2010, until this day.

216.    Plaintiff alleges that as a result of the acts of Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of

law, he suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

**COUNT III**
**ABUSE OF AUTHORITY**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

217.     Plaintiff re-alleges Paragraphs 1 through 216 and incorporates them by reference as Paragraphs 1 through 216 of Count III of this Complaint.

218.     Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, personally interfered with and deprived him of his constitutional rights, including the rights to petition his government for redress of his grievances and to be free from deprivation of life, liberty, and property without due process of law.

219.     Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acting individually and in their official capacities as a public officials of Defendant CITY under color of law, and having been fully advised that he was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further violate his civil rights, or knowing such discrimination was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

220.     Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with gross disregard of his rights.

221.     Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acted in an outrageous and systematic

pattern of civil rights violations, oppression, bad faith and cover-up, directed at him and continuing from in or around August 22, 2010, until this day.

222. Plaintiff alleges that as a result of the acts of Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, he suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT IV
## VIOLATION OF THE FOURTH AMENDMENT
## ILLEGAL SEARCH OF THE RESIDENCE
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

223. Plaintiff re-alleges Paragraphs 1 through 222 and incorporates them by reference as Paragraphs 1 through 222 of Count IV of this Complaint.

224. Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, personally interfered with and deprived him of his constitutional rights, including the rights to petition his government for redress of his grievances and to be free from deprivation of life, liberty, and property without due process of law.

225. Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acting individually and in their official capacities as a public officials of Defendant CITY under color of law, and having been fully advised that he was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further violate his rights, or knowing such violations was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

226. Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE

3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 in acting to deprive him of his rights,

acted intentionally, knowingly, willfully, and with gross disregard of his rights.

227.     Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE

3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acted in an outrageous and systematic

pattern of oppression, bad faith and cover-up, directed at him and continuing from in or around

August 22, 2010, until this day.

228.     Plaintiff alleges that as a result of the acts of Defendants' CITY; JOHN DOE 1;

JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of

law, she suffered emotional distress, monetary damage, and incurred medical and legal expenses,

and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

**COUNT V**
**VIOLATION OF THE FOURTH AMENDMENT**
**ILLEGAL SEIZURE OF THE PERSON**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

229.     Plaintiff re-alleges Paragraphs 1 through 228 and incorporates them by reference

as Paragraphs 1 through 228 of Count V of this Complaint.

230.     Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE

3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, personally interfered

with and deprived him of his constitutional rights, including the rights to petition his government

for redress of his grievances and to be free from deprivation of life, liberty, and property without

due process of law.

231.     Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE

3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acting individually and in their official

capacities as a public officials of Defendant CITY under color of law, and having been fully

advised that he was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further violate his civil rights, or knowing such violations was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

232.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with gross disregard of his rights.

233.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acted in an outrageous and systematic pattern of civil rights violations, oppression, bad faith and cover-up, directed at him and continuing from in or around August 22, 2010, until this day.

234.    Plaintiff alleges that as a result of the acts of Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, he suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT VI
### VIOLATION OF THE FOURTH AMENDMENT
### ILLEGAL SEARCH OF THE PERSON
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

235.    Plaintiff re-alleges Paragraphs 1 through 234 and incorporates them by reference as Paragraphs 1 through 234 of Count VI of this Complaint.

236.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, personally interfered with and deprived him of his constitutional rights, including the rights to petition his government for redress of his grievances and to be free from deprivation of life, liberty, and property without

due process of law.

237.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acting individually and in their official capacities as a public officials of Defendant CITY under color of law, and having been fully advised that he was being deprived of his civil rights, either acted in a concerted, malicious intentional pattern to further violate his rights, or knowing such violations was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

238.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 in acting to deprive him of his civil rights, acted intentionally, knowingly, willfully, and with gross disregard of his civil rights.

239.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acted in an outrageous and systematic pattern of civil rights violations, oppression, bad faith and cover-up, directed at him and continuing from August 22, 2010, until this day.

240.    Plaintiff alleges that as a result of the acts of Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, he suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT VII
### VIOLATION OF THE FOURTH AMENDMENT
### FALSE ARREST
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

241.    Plaintiff re-alleges Paragraphs 1 through 240 and incorporates them by reference as Paragraphs 1 through 240 of Count VII of this Complaint.

242.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, personally interfered with and deprived him of his constitutional rights, including the rights to petition his government for redress of his grievances and to be free from deprivation of life, liberty, and property without due process of law.

243.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acting individually and in their official capacities as a public officials of Defendant CITY under color of law, and having been fully advised that he was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further violate his civil rights, or knowing such violations was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

244.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with gross disregard of his rights.

245.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acted in an outrageous and systematic pattern of civil rights violations, oppression, bad faith and cover-up, directed at him and continuing from in or around August 22, 2010, until this day.

246.    Plaintiff alleges that as a result of the acts of Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, he suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT VIII
## VIOLATION OF THE FOURTH AMENDMENT
## UNLAWFUL DETENTION
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

247.    Plaintiff re-alleges Paragraphs 1 through 246 and incorporates them by reference as Paragraphs 1 through 246 of Count VIII of this Complaint.

248.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, personally interfered with and deprived him of his constitutional rights, including the rights to petition his government for redress of his grievances and to be free from deprivation of life, liberty, and property without due process of law.

249.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acting individually and in their official capacities as a public officials of Defendant CITY under color of law, and having been fully advised that he was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further violate his civil rights, or knowing such violations was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

250.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with gross disregard of his rights.

251.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acted in an outrageous and systematic pattern of civil rights violations, oppression, bad faith and cover-up, directed at him and continuing from in or around August 22, 2010, until this day.

252.     Plaintiff alleges that as a result of the acts of Defendants' CITY; JOHN DOE 1;

JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of

law, he suffered emotional distress, monetary damage, and incurred medical and legal expenses,

and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

**COUNT IX**
**VIOLATION OF THE FOURTH AMENDMENT**
**FALSE IMPRISONMENT**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

253.     Plaintiff re-alleges Paragraphs 1 through 252 and incorporates them by reference

as Paragraphs 1 through 252 of Count IX of this Complaint.

254.     Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE

3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, personally interfered

with and deprived him of his constitutional rights, including the rights to petition his government

for redress of his grievances and to be free from deprivation of life, liberty, and property without

due process of law.

255.     Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE

3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acting individually and in their official

capacities as a public officials of Defendant CITY under color of law, and having been fully

advised that he was being deprived of his constitutional rights, either acted in a concerted,

malicious intentional pattern to further violate his civil rights, or knowing such violations was

taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

256.     Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE

3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 in acting to deprive him of his rights,

acted intentionally, knowingly, willfully, and with gross disregard of his rights.

257.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE

3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acted in an outrageous and systematic

pattern of violations of his civil rights, oppression, bad faith and cover-up, directed at him and

continuing from in or around August 22, 2010, until this day.

258.    Plaintiff alleges that as a result of the acts of Defendants' CITY; JOHN DOE 1;

JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of

law, he suffered emotional distress, monetary damage, and incurred medical and legal expenses,

and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT X
## VIOLATION OF THE FOURTH AMENDMENT
## EXCESSIVE FORCE
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

259.    Plaintiff re-alleges Paragraphs 1 through 258 and incorporates them by reference

as Paragraphs 1 through 258 of Count X of this Complaint.

260.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE

3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, personally interfered

with and deprived him of his constitutional rights, including the rights to petition his government

for redress of his grievances and to be free from deprivation of life, liberty, and property without

due process of law.

261.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE

3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acting individually and in their official

capacities as a public officials of Defendant CITY under color of law, and having been fully

advised that he was being deprived of his civil rights, either acted in a concerted, malicious

intentional pattern to further violate his civil rights, or knowing such violations was taking place,

knowingly omitted to act to protect him from continuing deprivations of his rights.

262. Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with gross disregard of his rights.

263. Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acted in an outrageous and systematic pattern of civil rights violations, oppression, bad faith and cover-up, directed at him and continuing from in or around August 22, 2010, until this day.

264. Plaintiff alleges that as a result of the acts of Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, he suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT XI
## VIOLATION OF THE FOURTH AMENDMENT
## MALICIOUS PROSECUTION
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

265. Plaintiff re-alleges Paragraphs 1 through 264 and incorporates them by reference as Paragraphs 1 through 264 of Count XI of this Complaint.

266. Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, personally interfered with and deprived him of his constitutional rights, including the rights to petition his government for redress of his grievances and to be free from deprivation of life, liberty, and property without due process of law.

267. Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE

3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acting individually and in their official capacities as a public officials of Defendant CITY under color of law, and having been fully advised that he was being deprived of his civil rights, either acted in a concerted, malicious intentional pattern to further violate his civil rights, or knowing such violations was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

268.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with gross disregard of his rights.

269.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acted in an outrageous and systematic pattern of civil rights violations, oppression, bad faith and cover-up, directed at him and continuing from in or around August 22, 2010, until this day.

270.    Plaintiff alleges that as a result of the acts of Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, he suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

**COUNT XII**
**IMPROPER TRAINING**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

271.    Plaintiff re-alleges Paragraphs 1 through 270 and incorporates them by reference as Paragraphs 1 through 270 of Count XII of this Complaint.

272.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, personally interfered with and deprived him of his constitutional rights, including the rights to petition his government

for redress of his grievances and to be free from deprivation of life, liberty, and property without due process of law.

273.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acting individually and in their official capacities as a public officials of Defendant CITY under color of law, and having been fully advised that he was being deprived of his civil rights, either acted in a concerted, malicious intentional pattern to further violate his civil rights, or knowing such violations was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

274.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with gross disregard of his rights.

275.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acted in an outrageous and systematic pattern of civil rights violations, oppression, bad faith and cover-up, directed at him and continuing from in or around August 22, 2010, until this day.

276.    Plaintiff alleges that as a result of the acts of Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, he suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT XIII
## IMPROPER DISCIPLINE
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

277.    Plaintiff re-alleges Paragraphs 1 through 276 and incorporates them by reference as Paragraphs 1 through 276 of Count XIII of this Complaint.

278.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, personally interfered with and deprived him of his constitutional rights, including the rights to petition his government for redress of his grievances and to be free from deprivation of life, liberty, and property without due process of law.

279.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acting individually and in their official capacities as a public officials of Defendant CITY under color of law, and having been fully advised that he was being deprived of his civil rights, either acted in a concerted, malicious intentional pattern to further violate his civil rights, or knowing such violations was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

280.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with gross disregard of his rights.

281.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 acted in an outrageous and systematic pattern of civil rights violations, oppression, bad faith and cover-up, directed at him and continuing from in or around August 22, 2010, until this day.

282.    Plaintiff alleges that as a result of the acts of Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 under color of law, he suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT XIV
## RACE DISCRIMINATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

283.    Plaintiff re-alleges Paragraphs 1 through 282 and incorporates them by reference as Paragraphs 1 through 282 of Count XIV of this Complaint.

284.    Plaintiff alleges that New York State Executive Law § 296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their race.

285.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 discriminated against him because of his race.

286.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20, he suffered the indignity of race discrimination and great humiliation.

287.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20'S violations caused him mental anguish, emotional distress, and loss of employment opportunities.

## COUNT XV
## RACE DISCRIMINATION
## IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE § 8-107

288.    Plaintiff re-alleges Paragraphs 1 through 287 and incorporates them by reference as Paragraphs 1 through 287 of Count XV of this Complaint.

289.    Plaintiff alleges that New York City Administrative Code § 8-107, makes it

unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their race.

290.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 discriminated against him because of his race.

291.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20, he suffered the indignity of race discrimination and great humiliation.

292.    Plaintiff alleges that Defendants' CITY; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20'S violations caused him mental anguish, emotional distress, and loss of employment opportunities.

## COUNT XVI
## NEGLIGENT HIRING

293.    Plaintiff re-alleges Paragraphs 1 through 292 and incorporates them by reference as Paragraphs 1 through 292 of Count XVI of this Complaint.

294.    Plaintiff alleges that Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 were incompetent, or vicious propensities, or of bad disposition.

295.    Plaintiff alleges that Defendant CITY had knowledge of these facts which would have caused a reasonably prudent person to investigate Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20'S disposition.

296.    Plaintiff alleges that Defendant CITY could reasonably have anticipated that Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and

JOHN DOES 6-20'S disposition would likely result in injury to others.

297.    Plaintiff alleges that Defendant CITY failed to use reasonable care to correct or remove Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20.

298.    As a result of Defendant CITY'S conduct, Plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

## COUNT XVII
## NEGLIGENT SUPERVISION

299.    Plaintiff re-alleges Paragraphs 1 through 298 and incorporates them by reference as Paragraphs 1 through 298 of Count XVII of this Complaint.

300.    Plaintiff alleges that Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20  were incompetent, or vicious propensities, or of bad disposition.

301.    Plaintiff alleges that Defendant CITY had knowledge of these facts which would have caused a reasonably prudent person to closely supervise Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20.

302.    Plaintiff alleges that Defendant CITY could reasonably have anticipated that Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20'S disposition would likely result in injury to others.

303.    Plaintiff alleges that Defendant CITY failed to use reasonable care to correct or remove Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20.

304.    As a result of Defendant CITY'S conduct, Plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

## COUNT XVIII
## NEGLIGENT RETENTION

305.    Plaintiff re-alleges Paragraphs 1 through 304 and incorporates them by reference as Paragraphs 1 through 304 of Count XVIII of this Complaint.

306.    Plaintiff alleges that Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 were incompetent, or vicious propensities, or of bad disposition.

307.    Plaintiff alleges that Defendant CITY had knowledge of these facts which would have caused a reasonably prudent person to terminate Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20.

308.    Plaintiff alleges that Defendant CITY could reasonably have anticipated that Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20'S disposition would likely result in injury to others.

309.    Plaintiff alleges that Defendant CITY failed to use reasonable care to correct or remove Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20.

310.    As a result of Defendant CITY'S conduct, Plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

## COUNT XIX
## ASSAULT

311.    Plaintiff re-alleges Paragraphs 1 through 310 and incorporates them by reference as Paragraphs 1 through 310 of Count XIX of this Complaint.

312.    Under the common law of Torts, makes it unlawful for a Defendant to intend to place a Plaintiff in imminent fear of a harmful and offensive touching.

313. Plaintiff alleges that remove Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 by their extreme and outrageous conduct intended to place Plaintiff in imminent fear of a harmful and offensive touching.

314. Based upon the foregoing, remove Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20'S extreme and outrageous conduct caused Plaintiff to be placed in imminent fear of a harmful and offensive touching.

315. As a direct and proximate result of the actions of Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 Plaintiff has suffered the indignity of racial discrimination and great humiliation.

## COUNT XX
## BATTERY

316. Plaintiff re-alleges Paragraphs 1 through 315 and incorporates them by reference as Paragraphs 1 through 315 of Count XX of this Complaint.

317. Under the common law of Torts, makes it unlawful for a Defendant to intend to cause an offensive bodily contact with the Plaintiff without his consent.

318. Plaintiff alleges that Defendants' JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 intended to cause an offensive bodily contact with the Plaintiff without his consent.

319. Based upon the foregoing, Defendants' JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20'S extreme and outrageous conduct caused an offensive bodily contact with the Plaintiff without his consent.

320. As a direct and proximate result of the actions of Defendants' JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20, Plaintiff has suffered the indignity of racial discrimination and great humiliation.

## COUNT XXI
## FALSE ARREST

321.     Plaintiff re-alleges Paragraphs 1 through 320 and incorporates them by reference as Paragraphs 1 through 320 of Count XXI of this Complaint.

322.     Under the common law of Torts, makes it unlawful for a Defendant to intend to confine the Plaintiff, where Plaintiff was conscious of the confinement, where Plaintiff did not consent to the confinement, and the confinement was not otherwise privileged.

323.     Plaintiff alleges that Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 by their extreme and outrageous conduct intended to confine the Plaintiff against his will inside of the 113th Precinct to cover up their misconduct.

324.     Based upon the foregoing, Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20'S extreme and outrageous conduct caused Plaintiff to be confined against his will inside of the 113th Precinct to cover up their misconduct.

325.     As a direct and proximate result of the actions of Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20, Plaintiff has suffered the indignity of racial discrimination and great humiliation.

## COUNT XXII
## FALSE IMPRISONMENT

326.     Plaintiff re-alleges Paragraphs 1 through 325 and incorporates them by reference as Paragraphs 1 through 325 of Count XXII of this Complaint.

327.     Under the common law of Torts, makes it unlawful for a Defendant to intend to confine the Plaintiff, where Plaintiff was conscious of the confinement, where Plaintiff did not

consent to the confinement, and the confinement was not otherwise privileged.

328.    Plaintiff alleges that Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3;
JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 by their extreme and outrageous conduct
intended to confine the Plaintiff against his will inside of the 113th Precinct to cover up their
misconduct.

329.    Based upon the foregoing, Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE
3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20'S extreme and outrageous conduct
caused Plaintiff to be confined against his will inside of the 113th Precinct to cover up their
misconduct.

330.    As a direct and proximate result of the actions of Defendants' JOHN DOE 1; JOHN
DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20, Plaintiff has suffered
the indignity of racial discrimination and great humiliation.

### COUNT XXIII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

331.    Plaintiff re-alleges Paragraphs 1 through 330 and incorporates them by reference
as Paragraphs 1 through 330 of Count XXIII of this Complaint.

332.    Under the common law of Torts, makes it unlawful for a Defendant to intend to
cause or disregard of the substantial probability of causing severe emotional distress, as
measured by the reasonable bounds of decency tolerated by a decent society, there is a causal
connection between the conduct and Plaintiff's injury and the Plaintiff has suffered severe
emotional distress.

333.    Plaintiff alleges that Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3;
JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 by their extreme and outrageous conduct
intended to cause or disregarded the substantial probability of causing severe emotional distress,

as measured by the reasonable bounds of decency tolerated by decency society, and their actions caused Plaintiff to suffer severe emotional distress.

334.    Based upon the foregoing, Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20 by their extreme and outrageous conduct intended to cause or disregarded the substantial probability of causing severe emotional distress, as measured by the reasonable bounds of decency tolerated by decency society, and their actions caused Plaintiff to suffer severe emotional distress.

335.    As a direct and proximate result of the actions of Defendants' JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20, Plaintiff has suffered the indignity of racial discrimination and great humiliation.

## JURY TRIAL

336.    Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

**Wherefore,** Plaintiff demands compensatory and punitive damages in the amount

of one hundred seventy-five million dollars from Defendants' JOHN DOE 1; JOHN DOE 2;

JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; and JOHN DOES 6-20  jointly and severally, plus

any and all available statutory remedies, both legal and equitable, interests and costs.

Dated:  June 24, 2011
      New York, NY

Respectfully submitted,

By: _____
Eric Sanders (ES0224)

**The Sanders Firm, P.C.**
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
(800) 371-4835 (Business Telephone)
(212) 537-9081 (Facsimile)

Website: http://www.thesandersfirmpc.com
Twitter: http://twitter.com/#!/AttyEricSanders
Facebook http://www.facebook.com/thesandersfirmpc